UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FIRE KING INTERNATIONAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:07-CV-0655-G |
| TIDEL ENGINEERING, L.P.,, | ) | |
| | ) | **ECF** |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In this patent case, the plaintiff has filed a motion for summary judgment on

its infringement claim and defendant has filed a motion for summary judgment on

the issues of invalidity, unenforceability, and non-infringement.  Because plaintiff has

failed to prove that the accused devices contain each and every element of the patent-

in-suit, defendant is entitled to a summary judgment of non-infringement.  In light of

that determination, the affirmative defenses of invalidity and unenforceability are

moot.

## I.  BACKGROUND

Plaintiff Fire King International, LLC ("Fire King") is the owner by assignment

of U.S. Patent No. 7,063,252 ("the '252 Patent"), which claims an electronic safe

and accounting control system such as used by merchants to collect and dispense

money.  (*See* Plf. MSJ App. at 001 & 007).  The invention includes at least one safe

equipped with an interior compartment for securing money, an outer door with an

electronic lock mechanism to control access to the interior compartment, a data input

device, an electronic display, a connector interface mounted to the housing, and a

processor programmed to control the operation of the electronic lock.  (*Id*. at 007).

The safe also may include bill validators and cash dispensing devices.  (*Id.*).  The

system operates either as a single, stand-alone safe or in a network of interconnected

units.  (*See id.* at 001 & 007).  When multiple units are arranged in a network, a

processor integrated with one of the safes controls any remote safes and other

network devices.  (*Id.* at 007).

Defendant Tidel Engineering, L.P. ("Tidel") manufactures and sells retail cash

security systems, known as Sentinel, for use by gas stations and convenience stores.

(*See id.* at 234).  The Sentinel system installs as a node on an existing network and,

through its propriety Windows-based software, provides a secure, two-way

communication between the store's point-of-sale ("POS") and back office reporting

system.  (*Id.*).  Defendant advertises that its system "allows users to view and

download transactional data or reports, remotely install currency updates, download

software enhancements and transfer status indicators or data logs," as well as

"provides the unique ability to electronically 'command and control' the operation of

the Sentinel through the POS terminal, providing full accountability and effectively closing the cash management loop." (*Id.*). Approximately 70% of the Sentinel systems sold by defendant are purchased by 7-Eleven for use in its convenience stores throughout the United States. (Def. MSJ App. at A-754, ¶ 4). Another convenience store chain, Speedy Stop Food Stores, L.L.C. ("Speedy Stop"), also has purchased several Sentinel systems for use in its Texas stores. (Def. MSJ Resp. App. at A-6, ¶ 9).

On April 16, 2007, plaintiff sued defendant for patent infringement in federal district court. In its most recent complaint, plaintiff alleges that the Sentinel system manufactured and sold by defendant infringes one or more claims of the '252 Patent. (*See* Plf. Sec. Am. Compl. at 7, ¶ 18).[1] Defendant denies any infringement and maintains that the patent-in-suit is invalid and unenforceable for a variety of reasons. (Def. Sec. Am. Ans. at 2-3, ¶¶ 6-22 & 6-7, ¶¶ 2, 4, 5, 9). The case is before the court on cross-motions for summary judgment. The issues have been fully briefed by the parties and the motions are ripe for determination.

---

[1]     Plaintiff also sues for a declaratory judgment of non-infringement, invalidity, and unenforceability with respect to two patents held by defendant -- U.S. Patent Nos. 5,813,510 ("the '510 Patent") and 5,742,034 ("the '034 Patent"). (*See* Plf. Sec. Am. Compl. at 8-9, ¶¶ 21-29 & 9-11, ¶¶ 30-38). However, neither party moves for summary judgment as to the claims involving those patents.

## II. <u>ANALYSIS</u>

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The substantive law determines which facts are material.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).  Where a case is presented by way of cross-motions for summary judgment, each movant has the burden of producing evidence to support its motion.  A movant who bears the burden of proof at trial must establish "beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  A party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of a genuine fact issue.  See *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).  Once the movant meets its initial burden, the burden shifts to the nonmoving party to produce evidence or designate specific facts in the record showing the existence of a genuine issue for trial.  See *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  All evidence must be viewed in the light most favorable to the party opposing the motion.  See *Foulston Seifkin LLP v. Wells Fargo Bank of Texas N.A.*, 465 F.3d 211, 214 (5th Cir. 2006).

A.

As a preliminary matter, the court considers three ancillary motions filed by plaintiff.  First, plaintiff seeks leave to file a summary judgment reply appendix that contains, *inter alia*, color photographs of the accused devices, an expert report, three supplemental expert declarations, and an article about cash controllers written by a former Fire King employee.  Although plaintiff has failed to articulate a good reason for allowing this new evidence at the reply stage, no injustice will result if the evidence is considered.  See *Springs Industries, Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (granting leave to file reply appendix where "no palpable injustice" would result from considering new materials).  Even if the court considers the photographs, the expert report, the supplemental expert declarations, and the article, plaintiff still has failed to produce evidence showing the existence of a genuine issue of material fact for trial on the issue of infringement.  The court therefore grants the motion for leave to file a summary judgment reply appendix [Doc. #147].

Second, plaintiff has filed a motion for additional briefing to address some 39,000 emails recently produced by defendant.  The motion [Doc. #157], which is really a Rule 56(f) motion for continuance, is denied because plaintiff has failed to demonstrate that the emails impact the disposition of the pending summary judgment motions.  Rule 56(f) authorizes the court to continue a summary judgment

proceeding "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition[.]"  FED. R. CIV. P. 56(f).  The purpose of this rule is to safeguard against the improvident or premature grant of summary judgment.  See *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).  While Rule 56(f) motions are treated and reviewed liberally, the party seeking relief must justify its entitlement to a continuance by presenting specific facts, supported by affidavit, explaining its inability to make a substantive response.  See *Axcess Broadcast Services v. Donnini Films*, No. 3:04-CV-2639-L, 2006 WL 1042334 at *2 (N.D. Tex. Apr. 19, 2006) (citing cases).  A general assertion that further discovery might reveal facts of which the party is currently unaware is insufficient.  *Id.*   his declaration, counsel for plaintiff states that he has been able to review only 10%-15% of the 39,000 emails.  (*See* Plf. Mot. App., Exh. 1 at 004, ¶ 17).  However, there is no showing that further review of the emails is necessary for plaintiff to justify its opposition to defendan's motion for summary judgment.  To the contrary, plaintiff admits that the recently produced emails offer "additional and conclusive evidence of infringement."  (*See* Plf. Mot., Jt. Stat. Rep. at 8).  Plaintiff is not entitled to a continuance merely to supplement the record with "better evidence."  See *AAI Recoveries, Inc. v. Pijuan*, 13 F.Supp.2d 448, 452 (S.D.N.Y. 1998) (litigants seeking Rule 56(f) relief must show that "material sought is germane to the defense, and that it is neither cumulative nor speculative").  Moreover, nothing in the five

- 6 -

sample emails submitted to the court for review suggests that consideration of the remaining emails will create a genuine issue of material fact for trial.

Third, plaintiff moves to strike the supplemental expert report of a defense expert, Bill Waites, who concludes that the '252 Patent is invalid as anticipated by two earlier patents.  That motion [Doc. #126] is denied as moot in light of the recommendation that defendant is entitled to a summary judgment of non-infringement.

B.

The threshold issue in this case is whether the Sentinel system manufactured and sold by defendant infringes the '252 Patent.  Plaintiff alleges that the accused devices infringe Claim 1 and Claim 11 of the patent.  Defendant counters that there is no evidence the Sentinel system has a "central system controller" that controls remote safes in a network as required by Claim 1, and a "central processing system" that communicates with and provides network control of all connected safes as required by Claim 11.  As the party with the burden of proving infringement, plaintiff must establish the essential elements of its infringement claim "beyond peradventure" to obtain summary judgment, and must come forward with competent evidence of infringement to create a genuine issue of material fact to defeat summary judgment in favor of defendant.  See *BMC Resources, Inc. v. Paymentech, L.P.*, No. 3:03-CV-1927-

M, 2006 WL 306289 at *2 (N.D. Tex. Feb. 9, 2006) (citing cases), *rec. adopted*, 2006 WL 1450480 (N.D. Tex. May 24, 2006), *aff'd*, 498 F.3d 1373 (Fed. Cir. 2007).

1.

A patent is infringed if every limitation set forth in a claim is present in an accused product either literally or under the doctrine of equivalents. *Seal-Flex, Inc. v. Athletic Track and Court Construction*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Jurgens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir.), *cert. denied,* 112 S.Ct. 281 (1991). Where, as here, only literal infringement is alleged, the patentee must prove that the accused product contains each limitation of an asserted claim. *Bayer AG v. Elan Pharmaceutical Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir.), *cert. denied*, 121 S.Ct. 484 (2000). "If any claim limitation is absent from the accused [product], there is no literal infringement as a matter of law." *Id.*; see *also Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313 (Fed. Cir.), *cert. denied*, 124 S.Ct. 464 (2003); *Catalina Marketing International, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002).

2.

The '252 Patent claims an electronic safe and accounting control system used to collect and dispense money. Claim 1 of the '252 Patent recites:

> An electronic lock and money control system comprising:
>
> at least one safe comprising:

- 8 -

> a housing having an interior compartment for securing money, and an outer door having an electronic lock mechanism to control access to the interior compartment;
>
> a data input device;
>
> an electronic display;
>
> a connector interface mounted to the housing; and
>
> a control system arranged to communicate with the data input device, electronic display, connector interface and electronic lock mechanism, wherein the control system includes a processor programmed to control operation of the electronic lock, as well as operate as *a central system controller* when connected to at least one other remote safe via the connector interface to monitor and accumulate financial and operational information for each remote unit.

(Plf. MSJ App. at 011-12) (emphasis added).  The court previously construed the term "central system controller" to mean "a processor that is part of the safe, though not necessarily internal to the safe, which operates to control remote safes in the network." *Fire King International, LLC v. Tidel Engineering, L.P.*, No. 3:07-CV-0655-G, 2008 WL 2246911 at *8 (N.D. Tex. May 30, 2008).  A "remote safe" can be a single unit capable of stand-alone operation, or a unit that functions only when connected to another safe via the connector interface.  *See id.* at *7.

Claim 11 of the '252 Patent recites:

> A network of interconnected electronic locking and money control devices comprising:
>
> > *a central processing system* integrated with one of the electronic locking and money control

> devices and arranged to control operation of
> the integrated device, wherein the central
> processing system is connected to all other
> network devices, and further arranged to
> communicate with all the other network
> devices and provide network control of all the
> other devices.

(*Id.* at 012) (emphasis added).  The parties have stipulated that the term "central

processing system" means "a processor capable of remotely operating remote

electronic locking and money control devices."  (Plf. MSJ Resp. App. at 32).

3.

In this case, plaintiff, through its expert, tacitly concedes that the Sentinel

system does not infringe the '252 Patent when an accused safe operates as a stand-

alone unit, and might not necessarily infringe the patent even when the safe is

connected to other remote safes.  (*See* Plf. MSJ Resp. App. at 274-75 & Fig. 7).

Indeed, only safes that have a "central system controller" can infringe Claim 1 of the

patent, and only safes that have a "central processing system" can infringe Claim 11

of the patent.  As evidence that defendant manufactures and sells such devices,

plaintiff points to the Sentinel products installed at Speedy Stop stores in Texas.  (*See*

Plf. Am. MSJ Br. at 13-14; Plf. MSJ Resp. Br. at 12).

The summary judgment evidence shows that Speedy Stop Store No. 301 in

Houston, Texas, is the only Speedy Stop store having two or more interconnected

Sentinel products.[2]  (Def. MSJ Resp. App. at A-9, ¶ 5; *see also id.* at A-7, ¶ 9).

Specifically, Store No. 301 has one Sentinel BCND (Bulk Coin Dispenser with Note

Dispenser) and two Sentinel SCDs (Stand-Alone Cash Depository) that are

connected to other devices in the network, which includes a POS system, a gas tank

monitoring system, a back office computer, a money order system, and a digital video

recording system.  (*Id*. at A-9, ¶¶ 5-6).  Although the Sentinel BCND and SCDs

communicate with each other, (*id*. at A-7, ¶ 9; Plf. MSJ Reply App. at 033), one

Sentinel device does not control the others.  (Plf. MSJ Reply App. at 033; Def. MSJ

Resp. App. at A-10, ¶ 7).  Moreover, the Sentinel BCND and SCDs do not

communicate with or control the POS System, the gas tank monitoring system, the

back office computer, the money order system, or the digital video recording system.

(Def. MSJ Resp. App. at A-10, ¶ 7).  Nor do any of the other network systems control

the Sentinel devices.  (*Id.*).

    In an attempt to create a genuine issue of material fact, plaintiff relies on the

testimony of Mark Levenick, President and CEO of Tidel, that the Sentinel safes

installed in Speedy Stop stores "communicate back and forth to one another." (*See*

Plf. MSJ Reply App. at 034).  However, Claims 1 and 11 of the '252 Patent require

---

[2]        There is no evidence that any Tidel customer, other than Speedy Stop
Store No. 301, utilizes networked Sentinel products.  The only other Tidel customer
identified by the parties is 7-Eleven, but the Sentinel safes installed in 7-Eleven stores
are not connected and do not communicate with other Sentinel devices.  (*See* Def.
MSJ App. at A-728-30).

more than communication.  The claim language requires one safe to "control" other

remote safes or network devices.  There is no evidence in the summary judgment

record that this claim limitation is present in any of the Sentinel products at issue.  In

fact, in his deposition, Levenick makes clear that the Sentinel safes at Speedy Stop

stores *do not* control other safes in the network:

> Q:	In the configuration at a Speedy Stop store where at least two Sentinel safes are connected to each other, do these safes sends -- send commands back and forth to each other?
>
> A:	They do communicate back and forth to one another.
>
> Q:	What types of communications go back and forth to each other?
>
> A:	It's under the protocol that we've talked about before.
>
> Q:	All right.  In that configuration, does one of them control operation of the electronic lock of the other Sentinel safe?
>
> A:	No.  Each one has to -- independently controls the electronic lock.
>
> Q:	So[,] in other words, a -- a user wouldn't go to one of those safes and put in a sequence of -- of keys or button pushes that would case the physical activity of the lock on the other one to unlock?
>
> A:	It doesn't work that way.

* * * *

> Q:     And is [the consolidator/master safe] capable
>        of -- of taking over operation of the remote
>        safe or the slave unit and operating that unit?
>
> A:     No, it can't -- it can't control all functions on
>        -- on the -- the remote units.
>
> Q:     Can the consolidator unit control any
>        functions on the remote units?
>
> A:     . . . No.  I believe its set up to share data
>        between the two.

(*Id.* at 034).  Throughout his deposition, Levenick maintained that the "communication" between Sentinel devices in the network is limited to "data sharing" and "polling."  (Def. MSJ App. at A-2; Plf. MSJ Reply App. at 034).  Any command functions that might result in control are still in the development stage.  (*Id.*).

Plaintiff also relies on Tidel's marketing materials and expert testimony to prove that Sentinel safes are "capable" of operating other remote safes in a manner that would infringe the claims of the '252 Patent.  For example, one marketing brochure touts that "Tidel's software [ ] provides the unique ability to electronically 'command and control' the operation of the Sentinel through the POS terminal, providing full accountability and effectively closing the cash management loop."  (Plf. MSJ App. at 234).  In their reports, John Nabor and Umesh G. Jani, two experts retained by plaintiff, illustrate various ways in which a Sentinel safe *might* infringe the

'252 Patent if connected to other network devices in a particular manner.  (*See, e.g.*,

Plf. MSJ Resp. App. at 273-74, 280-87; *id*. at 366, ¶ 18 & 369, ¶ 27).  Even

defendant's own expert, William Frazier, states in his report that "[t]he Sentinel *can*

*be* directly connected to other Sentinel safes in a store so that all of these safes

become part of a network with one safe or other device having command and

control."  (Plf. MSJ App. at 236) (emphasis added).  However, none of this

hypothetical evidence creates a genuine issue of material fact as to whether any of the

Sentinel products installed at Speedy Stop stores are *actually* configured in such a way

as to infringe Claim 1 and Claim 11 of the '252 Patent.  See *Ball Aerosol and Specialty*

*Container, Inc. v. Limited Brands, Inc.*, 555 F.3d 984, 994-95 (Fed. Cir. 2009) (patent

not infringed by accused product that was "reasonably capable" of being put into

claimed configuration).  Without such evidence, defendant is entitled to a summary

judgment of non-infringement.

The plaintiffs argue that the language of the patent is "drawn to capability"

and that, as a result, the defendant can be liable for infringement without *actually*

infringing on the patents.  Fire King's Objection and Memorandum in Support of

Objection to the Recommendation of the Magistrate Judge Regarding the Cross-

Motions for Summary Judgment ("Objections") at 4.  Specifically, Fire King points to

the language in Claim 1 of the '252 Patent which lists "a control system *arranged to*

communicate with the data input device," and "a processor *programmed to* control

operation of the electronic lock." *Id.* at 9.  It contends that this language makes clear that if the defendant's product "<u>can</u> operate as a central system controller," it infringes.  *Id.* (emphasis in original).  As support for this contention, Fire King relies on *Fantasy Sports Properties, Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108 (Fed. Cir. 2002).

In *Fantasy Sports*, the Federal Circuit examined two computer programs that allow users to create their own football teams based on actual National Football League teams and players.  Fantasy Sports Properties, Inc. ("Fantasy") owned a patent on such a computer program.  *Id.* at 1111.  Fantasy's program gave users the opportunity to earn bonus points based on unusual plays.  *Id.* at 1117. Sportsline.com, Inc. ("Sportsline"), the defendant, had a similar program.  Sportsline argued its product did not infringe on Fantasy's patent, however, because it did not include the availability of bonus points.  *Id.*  Sportsline admitted that its software gave users the *choice* to earn bonus points.  *Id.* at 1117-18.  It stated, "[a]fter you create your league website a simple Scoring Wizard will allow you to configure the many powerful options briefly described below."  *Id.* at 1119.  One such option was the ability to use bonus points.  *Id.*  "Consequently, a user need only utilize the Scoring Wizard program . . . to play a fantasy football game that provides for the awarding of bonus points."  *Id.*  Based on this conclusion, the court found that Sportsline's product infringed on Fantasy's patent.  The court in *Fantasy Sports* was careful to note, however, that infringement may not "be based upon a finding that an

- 15 -

accused product is merely capable of being modified in a manner that infringes the claims of the patent." *Id.* at 1118. But where the *user* is presented with options to customize the program, and those options include a setting that infringes on another's patent, the accused product is more than "merely capable of being modified in a manner that infringes the claims of the patent." See *id.*

Here, Fire King argues that the language of its patents, like those in *Fantasy Sports*, are drawn to capability. It contends that, just as in *Fantasy Sports*, the court must focus on whether the products could and not whether "the accused devices actually do operate as a central system controller." Objections at 8. *Fantasy Sports*, however, explicitly does not stand for the proposition that any product capable of infringing on another's patent actually does infringe. The limited holding of *Fantasy Sports* is that where the accused product presents users with the option to include an infringing feature, the product is "more than merely capable of being modified" to infringe. *Fantasy Sports*, 287 F.3d at 1118. Thus, the plaintiffs' reliance on *Fantasy Sports* is misplaced. Further, there are other cases specifically holding that merely because a device *could* be modified to operate to operate in an infringing manner does not equate to infringement. *High Tech Medical Instrumentation, Inc. v. New Image Industrial, Inc.*, 49 F.3d 1551, 1555-56 (Fed. Cir. 1995) (holding that merely because an accused device could be altered in a way that satisfies the claim term "rotatably coupled" did not *per se* justify a finding of infringement); *Telemac Cellular Corporation*

*v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001) ("[T]hat a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement.").  In short, the plaintiffs read too much into the fact that the claims use "capability" language.  The defendant is entitled to summary judgment on the issue of infringement.

## C.

Defendant also seeks summary judgment on its affirmative defenses of invalidity and unenforceability.  Where a court grants a summary judgment of non-infringement, any affirmative defenses become moot.  *Cardinal Chemical Co. v. Morton International, Inc.*, 508 U.S. 83, 93-94, 95-96, 113 S.Ct. 1967, 1973-74, 124 L.Ed.2d 1 (1993), *quoting Altvater v. Freeman*, 319 U.S. 359, 363-64, 63 S.Ct. 1115, 1117-18, 87 L.Ed. 1450 (1943) ("To hold a patent valid if it is not infringed is to decide a hypothetical case"); see also *Mangosoft, Inc. v. Oracle Corp.*, 482 F.Supp.2d 179, 180 (D.N.H. 2007); *Trimble Navigation Ltd. v. RHS Inc.*, No. C 03-1604 PJH, 2007 WL 2727162 at *1 (N.D. Cal. Sept. 17, 2007); *Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 92 F.Supp.2d 483, 500 (E.D. Va. 2000), *aff'd*, 262 F.3d 1258 (Fed. Cir. 2001).  Accordingly, the court should deny as moot defendant's motion for summary judgment on the issues of invalidity and unenforceability.[3]

---

[3]     The analysis would be different had defendant raised the issues of invalidity and unenforceability by way of a counterclaim for declaratory relief.  See *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1370-71 (Fed. Cir. 2004)

(continued...)

- 17 -

## III.  <u>CONCLUSION</u>

For the reasons discussed above, the motion for summary judgment is

**DENIED** in part and **GRANTED** in part.

**SO ORDERED**.

April 1, 2009.

_____
A. JOE FISH
**Senior United States District Judge**

---

[3](...continued)
(federal court has broad discretion in deciding whether to entertain declaratory judgment action on the issue of invalidity after determining that the patent-in-suit has not been infringed); *Phonometrics, Inc. v. Northern Telecom, Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) (same).